Good afternoon, Your Honors. Please report, this is Judith Wood. Good afternoon, Ms. Wood. Just wait a second, please, because I'm not sure I see your... I guess Mr. Mack would be... Mr. Mack, are you there? I'm there. I was just on mute, Your Honor. Okay, no problem. Great. I think we're ready to begin then. Sorry to interrupt you, Ms. Wood. Please go ahead. Good afternoon, Your Honors. This is Judith Wood for Mr. Reynaga Estella. Review before the Ninth Circuit Court of Appeals. I've never done an oral argument on Zoom, so forgive me if I'm a little awkward. I'm not on mute, am I? No, we can hear you fine. Thank you. Great. We believe that Mr. Reynaga was not given a fair hearing the last time that he appeared before Judge O'Connor in Los Angeles. And when the judge made his decision on January 5th, 2017, he himself, the judge, listed all the pieces of evidence which he did not allow. The judge did not allow the respondent, Mr. Reynaga, to testify. The judge did not allow the respondent's father, Guillermo Reynaga, to testify. Nor did he allow his mother to testify, or his sister. And he did not accept evidence which was submitted to the court. Therefore, we think that this was an extremely prejudicial hearing because this case was remanded for not only the issue of particular social group in light of subsequent cases, but also for further fact-finding, which the… Counsel, of the things that you identified that the IJ didn't allow, how many of those were not late under the rules that the IJ had set up for conducting the hearing? Which ones weren't late? Well, I take note of your point, Your Honor, and… Well, I was just asking a question. Were any of them not late? Well, the testimony of the respondent was obviously not late. He could have testified during that hearing. And the judge basically disallowed him from testifying, and that is… Sorry, where is that in the record? Yes. Where the judge completely disallowed him from testifying? Not completely, but discouraged him. On page 44 of the transcript, the judge says, do you really want to do that? If he starts testifying as an expert, he discouraged him from testifying as to the situation of his military connection, his family's military connection in Peru. And the respondent could have testified to that, to his grandfather's position in the military, to his uncle's position in the military, and how the family was prejudiced and persecuted, and why Mr. Inaga was actually persecuted on account of his family's membership in the military. He should have had the opportunity to at least talk about that in court. I believe that that's one of the reasons why the judge actually, the court, both the Ninth Circuit and the Board of Immigration Appeals, remanded it so that this person could have a chance to talk about that. Instead, the judge pretty much disallowed it. The judge spent, this is not a short transcript, really. It's 83 pages. Most of it is taken up with the judge describing his own family and his relationships and his different countries that members of his family come from. The judge's family, not the respondent's. This case was not remanded for the judge to discuss his particular social group or for the trial attorney. There's also many pages of the trial attorney actually talking about she has one child and she's an only child. It has nothing whatsoever to do with this case, whereas the respondent, whose case it was, was not really, he was discouraged very much so from testifying. Throughout the course of the hearing, the judge basically castigated the attorney, Mr. Steinberg, who was trying his best to present a credible case in this instance. We believe that this judge was extremely unfair and the case has to be remanded so that Mr. Inaga can actually do what the Ninth Circuit and the Board of Immigration asked for the court to allow him to do, and that is to present his case. The case revolves around his membership or his lack of membership in a particular social group. His grandfather was a high-ranking military man. His uncle was in the military, and as a result of the search— I don't think it was disputed that he had family members in the military, as you're describing. My understanding was that the board ultimately was not convinced about nexus, perhaps also social group, but also nexus. So could you speak to how the omitted evidence would have helped on the nexus prong? Well, first of all, it's not circular, as some BIA decisions have found, that you can't find a particular social group because the nexus is circular. It's not circular. Military people are a particular social group. But what is the evidence here that any harm was because of the military family? The reason why he was a member of a particular social group was because of where he lived. In Peru, in the area where he lived, people who had served in the military were accorded certain residential privileges, and he lived in more or less of a compound, a walled-in compound. Counsel, I'd like to bring you back to Judge Friedland's question. What actual evidence was presented that there was a nexus between this supposed cognizable social group and the harm, as opposed to his family was affluent, he was a member of a rival gang, everybody in the neighborhood— I think his sister might have testified. I might be misremembering this, but his sister testified. Well, you know, everybody suffered this violence and these types of events. So what evidence is there that there's a nexus between the supposed social group and the harm he either suffered or fears, but particularly that he suffered? Respectfully, Your Honor, I believe that the nexus requirement could have been provided to the immigration judge if he had allowed testimony, if he had allowed the father to testify, the respondent, and the sister. The sister did testify at an earlier hearing that, in fact, I don't know whether she was raped or almost raped. Many times women don't admit to having been raped until after the fact. But she also learned that the reason why she was raped was because of her brother's affiliation by family membership with a military group. So I'm sorry, what's the evidence of that point in the record? That was at the very beginning of the case, or when the case was first heard in Lancaster. Well, where was her testimony that she believes that she would—I think it was described as attempted rape, but regardless of whether it was attempted rape or rape, both are obviously very serious. Where was her testimony that it was because of her brother's membership in the military social group or even because of her brother? Wasn't there just some speculation that maybe the people knew her brother was in a rival gang? Well, she was told that the brother would be killed on account of if he ever went back to Peru. And she was told by her friends that actually the reason why this happened to her is because of the family connection to the military. And that's in the record. It's at the CAR page 498, actually. It's kind of hearsay on hearsay. I mean, she was told. I mean, it's a little attenuated. You know, I think I can understand some of the frustration. I mean, this case is one in which every time—I mean, this has been going on for years, actually. And every time it goes up and then it comes down, your client comes up with another reason or shade of reason as to why he should be entitled to relief. And then it goes up, and he comes back down, and then he's got yet another reason. So that wasn't discussed before, and I think that's why the hearings officer put—the IJ put some deadlines on them, because, I mean— Well, I don't think that actually he did present a new definition of his social group. He put a whole new shade on it, looking at it differently. He didn't raise that in the first place. That wasn't one of his first claims for relief. Well, from the very beginning of his case, he asserted that he was a member of a particular social group on account of his family affiliation with the military, and that the gangs were very much opposed to people who lived in this area whose family—they only lived there because they were members of the military. Well, he was in a gang. Well, I mean, that was never a grounds for his being removed or anything else. He was not a violent member of the gang. I mean, the definition of gang can be discussed, I guess, in another forum, but that was not an issue in his case, whether or not— The evidence was there were two main gangs. One was the one he didn't belong to, and the other one was the one he did belong to. Well, the one that he belonged to was simply a group of guys where he lived. They didn't assault people. They didn't commit burglary. Of course, that's not in the record. It was never brought up in the record, but the other gang that did assault him numerous times and either tried to or raped his sister was a violent gang, a very violent gang, of which he did not participate in. He did not have any violent activity whatsoever in Peru except to defend himself, and even then he was merely a victim. So I'm looking at AR 498 to 499, which isn't the actual testimony by the sister but describes the testimony by the sister, and it talks about her being attacked by gang members. I don't see anything about the military. Can you explain why you think it's referring to the military? Well, they told her, apparently, her testimony told her that they would definitely kill Mr. Inaga if he went back to Peru. But that could be because he was in the rival gang. But the situation was not exactly rival. I mean, it was an association, if you will, of boys and men where he lived. His gang was not violent, but that was not presented in the lower, before the original immigration judge. Okay, we've taken you over your time. If you'd like a minute for rebuttal, we could still squeeze that in, but I think we better stop you now and hear from Mr. Mack. Good afternoon, and may it please the court. Greg Mack for the respondent, the acting attorney general. The court, of course, has my 13,000-word brief, so let me try to go through a few of the petitioner's claims. The first was the immigration judge did not allow the petitioner to testify. Well, if the court goes to page 309 of the record, he was not on the witness list, which itself was late. Only his parents were on the witness list. So neither his sister nor the petitioner himself were on the witness list that the petitioner's counsel presented to the immigration judge. I believe that's at page 309. With respect to not allowing the parents to testify, the court is aware in the record that there was a whole discussion about whether the new particular social group should be advanced. And then they got into a discussion, I believe, with respect to social distinction, which recalls upon an applicant to provide evidence of what the society perceives about the proposed particular social group. And the immigration judge was questioning, well, how can this petitioner or even his parents, I guess, testify about something involving Peruvian society? And so the immigration judge was right to be skeptical about an applicant who hasn't been in Peru since 2000 testifying what Peruvian society perceives with respect to the social group claim. So as Judge Bennett pointed out, the evidence that was sought to be admitted was late. The immigration judge clearly set out a deadline to file evidence, and this evidence came in late with respect to the rape allegation and with respect to the Peruvian National Police Chief of Logistics Office evidence. That's just late evidence. And I would simply say that the orderly and fair prosecution and defense of claims before a tribunal requires a judge who knows what the claims are, makes sure the parties know what the claims are, sets deadlines to avoid surprises, and here's the evidence. And an immigration judge can insist on an orderly and fair process, and it isn't biased to insist on an orderly process. Well, so these deadlines, though, could have been waived in discretion of the IJ, right? So the IJ could have exercised discretion to say, OK, you can have the sister testify. Sure. I mean, that's certainly an IJ has broad and considerable discretion to set deadlines, but also to let the deadlines go by. So I think the concern here, then, is it may not show bias to have omitted evidence that was late, but there are statements that are concerning on the record here about whether this judge was biased. And I'd like you to speak to, for example, why it was appropriate or why it isn't concerning that the judge said that one of the problems is the government at the Court of Appeals has got to start standing its ground and not agreeing to remand all the time. How is that a neutral statement and not a statement that's taking a biased position in this case? Well, it's not a biased position, Your Honor, with respect to his role at the immigration court level. His arms are too short to fight with what the Department of Justice does before the Court of Appeals. That's his expression of frustration, if you will, with respect to whether and how we sought a remand before the Court of Appeals, but he had no authority to do anything about it. That was his job to deal with it below. And he does actually deal with all of the particular social groups as well as the board, so the board can take care of any bias there because the IJ and the board discuss all of the putative social groups that he was put forward. So there's no prejudice with respect to that. And then in any event, the ultimate question, of course, is nexus, which Petitioner certainly can't and hasn't presented any evidence to show why the record compels a contrary conclusion. So the IJ – there's no doubt about it that the IJ, for lack of a better word, is perturbed by what he has before him. But he certainly – It seems like he was more than perturbed, though. It seems like he was perturbed and blaming Petitioner. Well, he's not blaming Petitioner. He's holding Petitioner's feet to the fire with respect to what do you mean you're bringing a new claim in here and exactly what are the parameters of this claim? And here's this deadline to present evidence of what your particular social group is because I'm going to hold both parties to account because not just Petitioner is entitled to due process, but government is entitled to due process. And at page 123 of the record, the IJ asks how the Department of Homeless Security is supposed to respond to the belated addition of the term gang to his particular proposed social group. So I think – and let's be clear here. If what happened below with the immigration judge occurred before an Article III federal district court judge, I think reasonable appellate judges would likely say that district court judges have considerably broad discretion in the manner in which they hear the cases before them, particularly where the issues were actually resolved by the immigration judge and the board with respect to a particular social group and then on the ultimate question of nexus. So the immigration judge can blow out steam with respect to how is this case before me and what are the issues before me, then set deadlines and says, well, bring the evidence in. I'll hear it, and I'll make a resolution. That's what the immigration judge did here. So – Counsel, I'd like to hear the government's position on whether the Petitioner ever presented to the IJ or the BIA a cognizable social group. No. They did not present a cognizable social group to the board. And there's sort of an evolution to the particular social groups. In 2017, we start with a young person in a place invested with drug and gang activity who is at risk of becoming a mortal victim of the gangs. That's at 640. And that's prior – well, that's before the government's remand, I believe. Sorry, I said 17. That's February 12, 2007. Then we have the government's remand in 2008. And then we have in 2016, April, at AR-71, the Petitioner saying a family of military and police in Peru threatened by the Shining Path. And then in July of 2016, we have family members of military and police officers in Peru who are threatened by Shining Path. July 2016 is the briefing and evidence deadline is set for November – is set. And then we have counsel withdrawing all of his other particular social groups of affluent military families, youth at risk of targeting by gangs, and those who live in prosperous neighborhoods. But in any event, the board and the IJ deal with all the particular social groups and says that none of them are cognizable for a variety of reasons related to immutability and particularity and social distinction. And I think that, again, gets back to how is Petitioner on remand to the immigration judge going to prove up social distinction here when they have to show that society perceives the groups that are presented to them as a cognizable social group. And they just weren't cognizable social groups. But the board goes on to say even if they were cognizable, there's no nexus here. And I think Petitioner – what we have here is that Petitioner is admittedly a gang member that had confrontations with rival gang members, and his father said it best. There's poverty and crime in Peru. So on this record, the evidence does not compel a conclusion that Petitioner is eligible for asylum and withholding and removal. And at bottom, there was no animus directed at Petitioner because any protected characteristic. And with respect to bias and due process violations alleged by Petitioner, it's clear in this record that evidence was submitted late. The witness list does not have Petitioner or his sister on it. And the immigration was right to foreclose evidence that came in late. If there's – I mean, again, the court has my 13,000-page brief on the subject, and I think I've tried to respond to the points raised by Petitioner about not having the ability to testify. But, again, the testimony and the dispute about the testimony was going to be about trying to prove up social distinction in a case where Petitioner had not been in Peru since 2000. And let me just conclude with the rape allegation here. The rape allegation was that he entered the United States in June of 24, 1999 in mortal fear of a rival gang. Yet the next year, in 2000, he returns to Peru and then comes back to the United States and in 2006 files an asylum application with no allegation of rape. He's 25 years old at that particular point. And apparently on the eve of the hearing in November of 2016, his counsel is told by Petitioner that there was attempted rape by the rival gang. And the immigration judge, of course, says, well, how is this evidence supposed to come in this late? So after the evidentiary deadline and after he had an opportunity to file an asylum application, and in 2000, where the record starts at 6-32, there was a whole hearing in 2007 about his asylum claim. And apparently he was raped in 2000. So that evidence should have come out at that particular time. So with that, I'll entertain any questions the court has or I'll just conclude. I don't have any additional questions. I have no questions. I don't think we have further questions, so thank you, counsel. I think we have a minute for rebuttal. Yes, I'd just like to remind the court that you held in – I'm not sure if I'm pronouncing this right. So Lotukhin v. Gonzalez, 4-17 and 3rd, 10-73, that it is a violation of due process if the IJ excludes witness testimony that the record could have demonstrated the petitioner's fear of future persecution. And in this case, that is what happened. No one was allowed to testify. I have been practicing immigration law for many years, and usually the respondent does not have to be on the witness list. The case is remanded and the respondent is allowed to testify and usually encouraged to testify. In this case, the respondent was discouraged, very much so, by the immigration judge from testimony. And the immigration judge really harassed the attorney to the point where I think he became really kind of shell-shocked during the hearing. I think this case has to be remanded for the original intent of the Ninth Circuit and the board, and that is to have an evidentiary hearing and to describe the social group with some evidence. Thank you. Thank you, both sides, for the very helpful arguments. This case is submitted.
judges: Friedland, Ezra, Bennett